**IN THE U.S FEDERAL DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**CIVIL DIVISION**

| | |
|---|---|
| **Chris Pascone** ) | |
| **2701 Park Center Drive** ) | |
| **Alexandria, VA 22302** ) | |
| ) | **Case No:**_____ |
| **Plaintiff,** ) | |
| ) | **JURY DEMAND** |
| **vs.** ) | For Race Discrimination, |
| ) | Harassment and Retaliation |
| **Oracle America Incorporated &** | Under Section 1981; |
| **Tom Rose** | Discrimination, Harassment and |
| **Defendants.** | Retaliation Under Title VII; |
| **1900 Oracle Way.** | Discrimination and Retaliation |
| **Reston, VA 20190** | under the American Disabilities |
| | Act Amendments Act of 2008; and |
| | Retaliation under the Family |
| | Medical Leave Act (FMLA). |

_____

### INTRODUCTION

Pursuant to FRCP Rule 8, and the plausibility requirements of *Iqbal* and *Twombly*, the Plaintiff Chris Pascone files this lawsuit against his employer, Oracle America Incorporated (Oracle) along with the individual Tom Rose, for race discrimination, harassment and retaliation under 42 U.S.C.§ 1981. Pascone also brings additional claims under Title VII, 42 U.S.C. §2000 et seq., against Oracle for race, sex, and disability discrimination, harassment and retaliation. Finally, Pascone also brings a claim of retaliation under the Family Medical Leave Act (FMLA), 29 U.S.C § 2611 *et seq.*

Pascone was an employee of Oracle from July 2018 until the time of his termination in August 2019. He was employed as a Sales Associate, earning an annual wage of approximately $163,000. Pascone is of Italian ancestry. He is also a heterosexual male, married to a woman of Filipino ancestry. While at Oracle, Pascone's supervisor Tom Rose would racially and sexually harass Pascone by calling him  a "guido", an "Italian greaseball", and by stating that Pascone was a "fag" and a "lady boy lover."

When he complained about this behavior to Oracle, Oracle claimed they were unable to substantiate this behavior. However, an affidavit from his co-worker, Willie Sayyad, confirms the racial and sexual harassment from Oracle and Rose. Additionally, when Pascone sought accommodations under the American's with Disabilities Act to care for his disabled mother, Rose and Oracle also stopped communicating with him in regards to his work duties. Pascone was then terminated in August 2019, and offered a severance of $3,193.00, along with a waiver of all claims.

Consequently, an action for the violation of his civil and employment rights now follows.

## **PART I. PARTIES**

1. Chris Pascone is of Italian ancestry. He is also a heterosexual (straight) male. Pascone was employed by Oracle as a "Sales Associate" from July 2018 until the time of his termination in August 2019. Under both Section 1981 and Title VII, Pascone is an employee of the Defendant under 42 U.S.C. §2000 *et seq.* He is also an employee under the FMLA, 29 U.S.C § 2611 *et seq.*

2. The Defendant Tom Rose was Pascone's Supervisor at Oracle. Rose is the North American Strategic Cloud Sales Director at Oracle. Based on Rose's LinkedIn Profile,[1] Rose has been with Oracle since 2010 (**Ex. A**).

3. Rose has minimum contacts with this state, and is individually liable under 42 U.S.C §1981 for the intentional infringement of Plaintiff's rights. *See Wright v. StoneMor Partners LLP*, No. 3:12-cv-380, 2012 U.S. Dist. LEXIS 129593, at *4 (W.D.N.C. Sep. 12, 2012) ("[I]ndividual supervisors can only be held liable under Section 1981 if they 'intentionally cause an employer to infringe upon' the rights secured by that statute. [quoting] *Tillman v. Wheaton-Haven Recreation Association,* 517 F.2d 1141, 1145 (4th Cir. 1975)").

---

[1] https://www.linkedin.com/in/tom-rose-674a094b/ (last visited 10/16/2020)

4. The Defendant Oracle America Incorporated (Oracle) is an American multinational with hundreds of employees in the United States and worldwide. Oracle provides products and services that address aspects of corporate information technology (IT), and trades on the S&P 500 under the ticker symbol, "ORCL."

5. Under Section 1981 and Title VII, Oracle is an employer of the Plaintiff under 42 U.S.C §2000 *et seq.* They are also an employer under the FMLA, 29 U.S.C § 2611 *et seq.*

## PART II. EXHAUSTION OF EEOC ADMINISTRATIVE REMEDIES

6. On January 2020, Pascone filed a charge of discrimination (Form 5) with the U.S. Equal Employment Opportunity Commission (EEOC) alleging race, color, sex, national origin, disability discrimination, harassment and retaliation.

7. On March 10, 2020, Oracle filed its position statement with the EEOC.

8. On September 30, 2020, the EEOC issued a "Right to Sue". It was received by counsel for the Plaintiff on or about October 8, 2020. This action was filed in this Court within 90 days of receipt of the Right to Sue under 42 U.S.C.§ 2000(e)-5(f)(1).

9. There are no administrative or exhaustion requirements under 42 U.S.C §1981, and the Family Medical Leave Act (FMLA).

### PART III. JURISDICTION & VENUE

8. This Court has jurisdiction of this action under 28 U.S.C. §1331, 28 U.S.C §1343 (4) and 42 U.S.C. $2000(e)-(5) f in order to protect rights guaranteed by 42 U.S.C §1981; Title VII of the 1964 Civil Rights Act, 42 U.S.C. $2000 (e) *et seq.* and 42 U.S.C. § 12111 *et seq.*

9. Venue is proper in this Court because the Defendants have sufficient contacts with the venue. Pascone was employed and terminated by Oracle while working at the Reston, Virginia location, and the events and allegations contained in this action also occurred in Virginia.

### PART IV. STATEMENT OF FACTS

10. The Plaintiff Chris Pascone is of Italian ancestry and ethnicity. Pascone is a heterosexual male. He is married to an Asian female from the Philippines. Pascone also has a disability association with his mother, who suffers from multiple sclerosis (MS). His mother is wheelchair bound.

11. Pascone was employed with the Defendant Oracle from July 2018 to August 2019. He was employed as a Strategic Cloud Education Sales Representative, with an annual salary of approximately $86,000, plus another $86,000 in yearly

commissions, for a total annual wage of approximately $172,000.

12. Pascone was employed at the Oracle facility located at 1900 Reston Parkway, Reston, Virginia.

13. Pascone's immediate supervisor was Tom Rose, a White Male.

14. Pascone reported to Rose only, on a daily basis.

15. Rose also had approximately another 12-16 employees and/or Sales Representatives report to him.

16. Pascone's duties while at Oracle included making sales calls and emails to Oracle customers. As part of his duties, he was also provided with an American Express (AMEX) credit card for business related expenses.

17. While at Oracle, Pascone was subject to sexual and racial harassment by his supervisor, Rose.

18. Almost immediately upon Pascone's hire, Rose started making racially and derogatory remarks on a <u>frequent and regular basis</u> towards Pascone.

19. Pascone was <u>deeply offended</u> by these racial and sexual remarks of unwelcomed harassment.

20. For example, Rose would openly say to Pascone's team, that Pascone was a homosexual, and that Pascone was lying about his sexual orientation.

21. Rose during this time was also aware that Pascone was engaged to his fiancée, a female, from the Philippines.

22. On October 10, 2018, Rose slapped Pascone on the ass and said, "*Well I thought you swing that way with all the lady boys*." This incident was also witnessed by Pascone's co-worker, William Sayyad.

23. Pascone was deeply offended and humiliated. The harassment also made it difficult for him to concentrate at work.

24. On November 28, 2018, Rose again made a harassing and offensive statement suggesting that Pascone's vacation in Asia, in December 2018 with Pascone's fiancée was to "bang the lady boys."

25. Everyone in the room laughed. Pascone was again deeply offended by the continued and unwelcomed harassment.

26. On November 29, 2018, Rose again said to Pascone, in reference to his trip to Asia, "don't enjoy too many lady boys because we know what you are into!" Pascone was again deeply offended, and had trouble concentrating at work.

27. Sometime in December 2018 or January 2019, Pascone on his own initiative had a conversation with his manager and supervisor Tom Rose, regarding work and customer related expenses on his Amex corporate credit card. Pascone let Rose know that during his (Pascone's) travels, fraudulent activity had occurred on the Amex card, which Pascone was working to correct. Rose told Pascone to deal with this

matter himself. All issues on this matter were resolved sometime in Spring 2019.

28. In January 2019, Sayyad informed Pascone, that Rose had said, that "*he* (Rose) *will do whatever it takes to get the fag* (Pascone) *out of here*!" Once again Pascone was deeply offended for being referred to as a "fag." Pascone is also not a homosexual.

29. In February 2019, Rose also called Pascone, an "*Italian gangster*" and a "*Sketchy Italian grease ball*."

30. Pascone was again deeply offended and humiliated. Pascone had trouble concentrating at work by the continued racial and sex harassment.

**Pascone's February 2019 – April 2019 Protected Activities**

31. Sometime in February 2019 and again in March 2019, Pascone engaged in protected activity by voicing his opposition to the harassment in a telephone call with Senior Human Resources (HR) Administrator Angela Floyd. In April 2019, Pascone for the third time, again complained of harassment to Karen Terry, Senior HR advisor.

32. All this while, Pascone also believed that he was being harassed based on the basis of his race and sex.

33. In March/April 2019, HR had a discussion with Pascone about the use of racial slurs on Oracle's *LinkedIn* webpage.[2] Oracle alleged these slurs were made by Pascone.

34. Pascone informed HR that he had no access or control over the Defendant's corporate webpage and that judging by the language used it was possibly made by someone in a leadership position, including Rose to slander and defame Pascone.

35. Oracle Sales Representatives also do not have the ability to edit or correct any statements made or published on the Defendant's *LinkedIn* webpage.

36. Upon information and belief, Rose may have had access to edit, add or correct the content of Oracle's *LinkedIn* webpage.

**Disability Discrimination Claims.**

37. In the March 2019 period, Pascone was meeting 52% of his sales quota and was in the top 4 of his entire sales team.

38. Pascone had closed several software deals in the month of February 2019, and his performance was equal to or exceeding his peers.

---

[2] https://www.linkedin.com/company/oracle (last visited 12/15/2020)

39. In March 2019, Pascone's brother died from a car accident. His mother, a resident in upstate New York, was left without a care provider.

40. During this March/April 2019 period, Pascone also completed the Oracle's "Accommodations Request Form" so that he could take care of his mother and make funeral arrangements for his brother.

41. In April 2019, Pascone began taking care of his mother, a disabled individual under the American Disabilities Act Amendments Act of 2008 (ADAAA). She was diagnosed with Multiple Sclerosis (MS), which affected the major life activities of eating, sleeping, walking, standing, sitting, speaking, breathing, learning, reading, concentrating, thinking, communicating, and interacting with others. She was also wheelchair bound.[3]

42. Pascone sought permission to work remotely so he could take care of his mother.

43. Other Sales Representatives who were allowed to work remotely were: Jeff Gamelin; Bill Gamelin; Ed Quinn and Martin Dandridge. There may well be others.

---

[3] Under the ADAAA, no employer shall discriminate against an employee, "denying equal jobs or benefits to a qualified individual because of the known disability of the individual with whom the qualified individual is known to have a relationship or association…" 42 U.S.C. §12112(b)(4); *Thompson v. N.A. Stainless Steel*, 131 S.Ct. 863 (2011).

44. Soon after engaging in protected activity under the ADAAA and Title VII, Rose retaliated against Pascone by not communicating with Pascone regarding his work duties.

45. Numerous emails, voice mails, text and instant messages from Pascone to Rose on work related matters went unreturned.

46. Rose's non-communication with Pascone on work related matters, prevented Pascone from performing his work duties.

47. On or about May 20, 2019, Pascone was informed that he was being terminated, effective May 21, 2019 for being absent without leave (AWOL). No other reasons were provided.

48. Pascone immediately sent an email to Oracle management: Barrows, Floyd, Terry and Rose, and informed them that he was still at work, and that despite his numerous attempts to communicate with his supervisor Rose regarding his work responsibilities and duties, Rose was not returning Pascone's email and telephone calls.

49. Barrows withdrew Pascone's notice of termination.

50. On July 23, 2019, the undersigned counsel also communicated with Barrows and informed her of his claims under Title VII and other state and federal discrimination laws.

51. Two (2) days later on July 25, 2019, the undersigned also communicated with counsel for Oracle, Jenny Cortner.

52. On July 29, 2019, Pascone again had a conversation with Barrows and Daniel Scott, Director Global Investigations, about the harassment he had been experiencing at work. The conversation lasted an hour.  They offered no help, nor explained to Pascone, what would be the next steps.

53. Oracle later determined that Pascone's allegations of harassment could not be collaborated.

54. Oracle did not try very hard. Oracle never contacted Willie Sayyad, the affiant who had provided a statement. This was despite Pascone telling Oracle to contact Sayyad.

55. Sayyad a co-worker of Pascone, who also reported to Rose, states in his affidavit that Rose would <u>frequently</u> sexually and racially harass Pascone, and that Rose also called Sayyad a "camel jockey" and if he (Sayyad) was riding his "camel with precision and care." Sayyad is Palestinian, and was extremely offended by the racial harassment from Rose.

56. Sayyad's affidavit states that Rose would <u>frequently</u> call Pascone, a "greasy Italian and a sketchy guido" and that Pascone, was "a lady boy lover and a little homo."

57. Less than 30 days after Pascone's protected activities, on August 22, 2019, Pascone received an overnight letter of termination from Senior VP of Cloud Global Sales, Lawrence Jelley.

58. Lawrence Jelley works in Australia (**Ex. B**).

59. Plaintiff has neither met nor spoken to Jelley.

60. No reason for his termination was provided in this August 22, 2019 letter.

61. At the time of Pascone's termination he was also performing satisfactorily.

62. Pascone was then offered a severance payment of $3,193.00, in exchange for releasing all of his legal claims against Oracle. Pascone did not sign the release.

63. Pascone was then replaced by an individual outside his protected class, and one who did not engage in protected activities under the laws.

**PART V. CAUSES OF ACTION.**

**COUNT I. RACE DISCRIMINATION UNDER §1981.**

64. Plaintiff incorporates by reference all the allegations above.

65. Plaintiff is of Italian race, ancestry and/or ethnicity.

66. Defendants Oracle and Rose intentionally discriminated against Plaintiff Christopher Pascone on account of his Italian race, ancestry and/or ethnicity in violation of 42 U.S.C. § 1981 by denying him equal terms and conditions of employment including but not limited to Rose's non-communications with Pascone and/or by terminating him. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 611

(1987)("[G]roups as constituting races, including Swedes, Norwegians, Germans, Greeks, Finns, Italians[.]")

67. Plaintiff's discrimination was not experienced by others outside his protected class.

68. Defendants intentionally interfered with Plaintiff's contract of employment because of their discriminatory animus towards his ancestry, race and/or ethnicity. Defendants acted in a willful and wanton manner and in callous disregard for the federally-protected rights of the Plaintiff.

69. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

70. As a consequence of Defendants' action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

**COUNT II. HARASSMENT & HOSTILE WORK ENVIRONMENT UNDER § 1981.**

71. Plaintiff reincorporates by reference the allegations above.

72. Defendants Oracle and Rose created a hostile work environment and/or harassed Plaintiff because of his race, ethnicity and/or ancestry, the offending conduct was unwelcome, was based on Plaintiff's protected class, and was sufficiently severe **or** pervasive when it altered the conditions of his employment and created an abusive work environment and was imputable to his employer Oracle and Rose.

73. Plaintiff was deeply offended by the behavior.

74. The affirmative defense of *Faragher*[4] and *Ellerth*[5] allows an employer to avoid strict liability for a supervisor's harassment of an employee if no tangible employment action was taken against the employee. Examples of tangible employment action include "discharge, demotion, or undesirable reassignment." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir.2001).

---

[4] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)
[5] *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998)

75. Plaintiff here suffered tangible employment actions from his supervisor when he was unable to perform his job because of the harassment, when Rose stopped communicating with Pascone on work related matters, stripped of all of his employment duties and/or when he was subsequently terminated in August 2019. As a result, "vicarious liability is absolute." *Mikels v. City of Durhum*, 183 F.3d. 323, 332 (4th Cir. 1999).

76. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

77. As a consequence of Defendants' actions, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

### COUNT III. RETALIATION UNDER § 1981

78. Plaintiff reincorporates by reference the allegations above.

79. Plaintiff engaged in protected activity and opposition to practices made unlawful under Section 1981 while employed by the Defendants.

80. As a result of his protected activities and opposition to practices made unlawful under Section 1981, Plaintiff was subjected to an adverse employment action, up to and including termination.

81. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by the Defendants.

82. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress

arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

83. As a consequence of Defendants' actions, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

**COUNT IV. RACE DISCRIMINATION UNDER TITLE VII.**

**42 U.S.C.§ 2000 *ET SEQ.***

84. Plaintiff reincorporates by reference all the allegations above.

85. Plaintiff is of Italian race, ancestry and/or ethnicity.

86. Defendant Oracle intentionally discriminated against Plaintiff Christopher Pascone on account of his race, ancestry and/or ethnicity in violation of Title VII, by denying him equal terms and conditions of employment and/or by terminating him.

87. Plaintiff's race discrimination was not experienced by others outside his protected class.

88. Defendant intentionally interfered with Plaintiff's contract of employment because of their discriminatory animus towards his race. Defendant acted in a willful and

wanton manner and in callous disregard for the federally-protected rights of the Plaintiff.

89. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

90. As a consequence of Defendant's action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

### COUNT V. SEX DISCRIMINATION UNDER TITLE VII.

### 42 U.S.C. §2000 *ET SEQ.*

91. Plaintiff reincorporates by reference all the allegations above.

92. Plaintiff is a heterosexual male.

93. Defendant Oracle intentionally discriminated against Plaintiff on account of his "sex," in violation of Title VII, by denying him equal terms and conditions of employment and/or by terminating him.

94. Plaintiff's discrimination was not experienced by others outside his protected class.

95. Defendant intentionally interfered with Plaintiff's contract of employment because of their discriminatory animus towards his sex. Defendant acted in a willful and wanton manner and in callous disregard for the federally-protected rights of the Plaintiff.

96. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf,

and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

97. As a consequence of Defendant's action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

**COUNT VI. SEX HARASSMENT & HOSTILE WORK ENVIRONMENT UNDER TITLE VII. 42 U.S.C §2000 *ET SEQ.***

98. Plaintiff reincorporates by reference all the allegations above.

99. Defendant Oracle created a hostile work environment and/or harassed Plaintiff because of his "sex," the offending conduct was unwelcome, was based on Plaintiff's protected class, and was sufficiently server **or** pervasive when it altered the conditions of his employment and created an abusive work environment and was imputable to his employer Oracle.

100. Plaintiff was deeply offended by the unwelcomed sexual harassment.

101. The affirmative defenses of *Faragher*[6] & *Ellerth*[7] allow an employer to avoid strict liability for a supervisor's harassment of an employee if no tangible employment action was taken against the employee. Examples of tangible

---

[6] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)
[7] *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998)

employment action include "discharge, demotion, or undesirable reassignment." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir.2001).

102. Plaintiff here suffered tangible employment actions from his supervisor when he was unable to perform his job because of the harassment, when the employer stopped communicating with him on work related matters, stripped of all of his employment duties and/or when he was subsequently terminated in August 2019. As a result, "vicarious liability is absolute." *Mikels v. City of Durham*, 183 F.3d. 323, 332 (4th Cir. 1999).

103. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf,

and the stress and anxiety caused by his wrongful

termination and resultant financial hardship.

104. As a consequence of Defendants' actions, it is

additionally liable for attorney's fees and other costs and

interest in pursuit of this litigation.

## COUNT VII. RACIAL HARASSMENT & HOSTILE WORK ENVIRONEMENT UNDER TITLE VII. 42 U.S.C. §2000 *ET SEQ.*

105. Plaintiff reincorporates by reference all the allegations

above.

106. Defendant Oracle created a hostile work environment and/or

harassed Plaintiff because of his "race," the offending

conduct was unwelcome, was based on Plaintiff's protected

class, and was sufficiently server **or** pervasive when it

altered the conditions of his employment and created an

abusive work environment and was imputable to his employer

Oracle.

107. Plaintiff was deeply offended by the unwelcomed racial

harassment.

108. The affirmative defense of *Faragher*[8] and *Ellerth*[9] allows

an employer to avoid strict liability for a supervisor's

harassment of an employee if no tangible employment action

was taken against the employee. Examples of tangible

---

[8] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)
[9] *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998)

employment action include "discharge, demotion, or undesirable reassignment." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir.2001).

109. Plaintiff here suffered tangible employment actions from his supervisor when he was unable to perform his job because of the harassment, when the employer stopped communicating with him, stripped Plaintiff of all of his employment duties and/or when he was subsequently terminated in August 2019. As a result, "vicarious liability is absolute." *Mikels v. City of Durham*, 183 F.3d. 323, 332 (4th Cir. 1999).

110. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf,

and the stress and anxiety caused by his wrongful

termination and resultant financial hardship.

111. As a consequence of Defendants' actions, it is

additionally liable for attorney's fees and other costs and

interest in pursuit of this litigation.

**COUNT VIII. RETALIATION UNDER TITLE VII. 42 U.S.C §2000 *ET SEQ.***

112. Plaintiff reincorporates by reference all the allegations

above.

113. Plaintiff engaged in protected activity and opposition to

practices made unlawful under Title VII, 42 U.S.C. §2000 *et

seq.*, while employed by the Defendants.

114. As a result of his protected activities and opposition to

practices made unlawful under Title VII, Plaintiff was

subjected to adverse employment actions, up to and

including termination.

115. A casual connection exists between Plaintiff's protected

activities and the adverse employment actions taken by the

Defendants.

116. As a direct and proximate result of this injury from the

Defendants, Plaintiff has suffered and is suffering

considerable injury, including but not limited to loss of

substantial past and future salary and income, benefits and

other privileges and entitlements of employment, loss of

professional status and career enhancing and advancement

opportunities and loss of retirement savings and benefits. Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

117. As a consequence of Defendants' actions, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

**COUNT IX. DISABILITY DISCRIMINATION UNDER the ADAAA.**

**42 U.S.C. §12112 *ET SEQ.***

118. Plaintiff reincorporates by reference all the allegations above.

119. Under the American Disabilities Act Amendments Act (ADAAA) of 2008, "no employer shall discriminate against an employee, "denying equal jobs or benefits to a qualified individual because of the known disability of the individual with whom the qualified individual is known to have a relationship or association…" 42 U.S.C. §12112(b)(4); *Thompson v. N.A. Stainless Steel*, 131 S.Ct. 863 (2011)

120. In the present instance, Pascone's mother has a disability and a record of said disability under the ADAAA. At all times Plaintiff's employer Oracle had knowledge of the mother's disability or perceived disability, since Pascone requested leave to care for his disabled mother. Mrs. Pascone also has a record of such an impairment and was regarded as having such an impairment by Oracle under the ADAAA.

121. Plaintiff alleges that one or more of the agents, managers, supervisors, and/or employees of Oracle, acting on its behalf, subjected him to disability discrimination on the basis of his association to his mother, when they stripped him of his prior duties, refused to communicate with him, only to then terminate him, affecting the terms and conditions of his employment.

122. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. Plaintiff has also suffered from emotional distress arising from the transfer, the damage to his professional

reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the resultant financial hardship.

123. As a consequence of Defendant's action, they are additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

### COUNT X. FAILURE TO ACCOMMODATE UNDER THE ADAAA

### 42 U.S.C. §12112 *ET SEQ.*

124. Plaintiff reincorporates by reference all the allegations above.

125. Defendant was at all times an employer of Plaintiff for purposes of the American Disabilities Act Amendments Act of 2008 (ADAAA), 42 U.S.C. §§12112 *et seq.*

126. Plaintiff Pascone has a disability association with his mother, who has been diagnosed with Multiple Sclerosis (MS). She is also wheelchair bound, that substantially limits one or more major life activities under the ADAAA in this case: eating, sleeping, walking, standing, sitting, and breathing.

127. At all times of Plaintiff's employment, Defendant had knowledge of the disability or perceived disability.

128. Plaintiff informed Defendant of his request for reasonable accommodations in this case to work remotely like his colleagues at Oracle.

129. Plaintiff alleges that one or more of the agents, managers, or supervisors of Defendant failed to accommodate his ADAAA requests. Had Defendant engaged in the interactive process, a reasonable accommodation would have been identified, that would not have caused an undue burden or undue hardship to the Plaintiff. Plaintiff would also have been able to perform the essential functions of his position with an accommodation under the ADAAA.

130. The defendant subsequently not only failed to engage in the interactive process, but also denied all reasonable requests for accommodations for alternative work arrangements, but also subjected Plaintiff to adverse employment actions, by terminating him in August 2019.

131. The Defendant is unable to show that the reasonable accommodations requested would have imposed "an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5).

132. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and

other privileges and entitlements of employment, loss of

professional status and career enhancing and advancement

opportunities, and loss of retirement savings and benefits.

Plaintiff has also suffered from emotional distress arising

from the loss of her job, the damage to her professional

reputation and the embarrassment, humiliation, and

indignity arising from the discriminatory conduct of

Defendant and/or agents or employees acting on its behalf,

and the stress and anxiety caused by her wrongful

termination and resultant financial hardship.

133. As a consequence of Defendant's action, Oracle is

additionally liable for

attorneys' fees and other costs and interest in pursuit of

this litigation.

**COUNT XI. RETALIATION UNDER THE ADAAA**

**42 U.S.C. §12112 *ET SEQ.***

134. Plaintiff reincorporates by reference the allegations

above.

135. At all pertinent times, Plaintiff was entitled to

protection under the American Disabilities Act Amendments

Act of 2008 (ADAAA).

136. The ADAAA makes it unlawful to retaliate against any

person who engaged in protected activity. 42 U.S.C.

§12203(a)

137. Plaintiff engaged in protected activities and opposition to practices made unlawful under the ADAAA while employed by the Defendant.

138. As a result of his protected activities and opposition to practices made unlawful under the ADAAA, Plaintiff was subjected to adverse employment actions, including termination and other adverse employment conditions that may well dissuade an employee from filing a claim of discrimination.

139. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by Defendant.

140. Defendant's acts of retaliation caused Plaintiffs to suffer economic losses, physical harm, mental and emotional distress, embarrassment, humiliation and indignity.

141. This intentional, reckless, and/or willful retaliation by the part of Defendant constitutes a violation of Plaintiff's statutory rights under the ADAAA.

142. By reason of Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies under the ADAAA, including his attorney's fees.

**COUNT XII. RETALIATION UNDER THE FAMILY MEDICAL LEAVE ACT (FMLA)**

**29 U.S.C. §2615 *ET SEQ.***

143. Plaintiff reincorporates by reference all the allegations above.

144. Under the FMLA it is illegal for the Defendant's to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the FMLA. *See* 29 U.S.C § 2615 (a)(2).

145. This Court analyzes FMLA retaliation claims under the *McDonnell Douglas* framework. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541 (4th Cir. 2006). A *prima facie* case for retaliation exists where: (1) the plaintiff engaged in a protected activity; (2) the defendant took adverse action against him; and (3) the adverse action was causally connected to his protected activity. *Id.* (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).

146. In the present instance, Pascone engaged in protected activity by requesting medical leave to make funereal arrangements for his brother and to care for his disabled mother.

147. Upon his request, his manager Rose, stopped communicating with Pascone on work related matters, preventing Pascone

from doing his job. He was then terminated in May 2019, only to be terminated again in August 2019.

148. Because of the close proximity of the adverse actions, it creates an inference of a causal connection that would dissuade a reasonable employee from filing an FMLA claim.

149. Defendants' acts caused Plaintiff to suffer economic losses.

150. This intentional, reckless, and/or willful act on the part of the Defendant constitutes a violation of Pascone's statutory rights under the FMLA.

151. By reason of Defendant's actions, the Plaintiff is entitled to all legal, monetary liquidated and equitable remedies under the FMLA, including his attorney's fees, plus interest.

## PART VI. PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays that this Honorable Court:

A. Declare that the Defendants committed one or more of the following acts:

(i). That Oracle and Rose knowingly violated his rights under 42 U.S.C. §1981, when they discriminated, harassed and retaliated against the Plaintiff;

(ii) That Oracle discriminated against the Plaintiff on the basis of race, sex, and disability in violation of Title VII, 42 U.S.C §2000 et seq.

(iii). That Oracle racially and sexually harassed the Plaintiff in violation of Title VII, 42 U.S.C §2000 et seq;

(iv) That Oracle Retaliated against Plaintiff for engaging in protected activities under Title VII, 42 U.S.C §200 et seq;

(v) That Oracle discriminated and retaliated against the Plaintiff under the American Disabilities Act Amendments Act of 2008 (ADAAA), 42 U.S.C. §12112 *et seq*; and that (vi). Oracle retaliated against him under the Family Medical Leave Act.

B. That the Court award Plaintiff damages in the amount equal to all of his accumulated lost wages and benefits, including back pay, front pay and benefits, punitive damages, and compensatory and emotional damages for the financial, physical and emotional harm caused by Defendant, including pre-judgment and post judgment interest and any other damages permitted under the federal laws, in an amount no less than three million dollars ($3,000,000.00);

C. That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of attorney's fees and expert fees and any and all other remedies that the Plaintiff maybe entitled to by all the laws and the powers of this Court.

**Part VII.**     **Jury Demand**

Plaintiff requests a trial by jury on all counts.

Dated: December 28, 2020                Respectfully Submitted,

/s/ Monique A. Miles, Esq.
VSB No. 78828
Old Towne Associates, P.C.
Attorneys at Law
216 South Patrick Street
Alexandria, VA 22314-3528
Phone: (703)519-6810
mmiles@oldtowneassociates.com

Dhali PLLC

<u>/s/A.J Dhali, Esq.</u>
DC Bar No. 495909
Dhali PLLC
1629 K Street, NW, Suite 300
Washington D.C. 20006
Phone: (202) 556-1285
Fax: (202) 351-0518
ajdhali@dhalilaw.com
*Pro Hac Vice Application Pending*

*Counsel for Plaintiff*

Enc: Exhibit **A,** Tom Rose *LinkedIn* Profile

Exhibit **B,** Lawrence Jelly *LinkedIn* Profile